**ORIGINAL**

1

```
                IN THE UNITED STATES DISTRICT COURT
            FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
                         SOUTHERN DIVISION


    RODERICK CLARK MILLER,
         Plaintiff,

    VERSUS                          CAUSE NO: 1:07cv541-LG-JMR

    HARRISON COUNTY, MISSISSIPPI,
    BY AND THROUGH ITS BOARD OF
    SUPERVISORS, HARRISON COUNTY
    SHERIFF DEPARTMENT, SHERIFF
    GEORGE PAYNE, OFFICIALLY AND
    IN HIS INDIVIDUAL CAPACITY,
    DIRECTOR OF CORRECTIONS MAJOR
    DIANNE-GATSON-RILEY,
    OFFICIALLY AND IN HER
    INDIVIDUAL CAPACITY, BOOKING
    SUPERVISOR CAPTAIN RICK
    GASTON, OFFICIALLY AND IN HIS
    INDIVIDUAL CAPACITY, TRAINING
    DIRECTOR PHIL TAYLOR,
    OFFICIALLY AND IN HIS
    INDIVIDUAL CAPACITY, CENTRAL
    CONTROL OFFICER PRESTON WILLS,
    OFFICIALLY AND IN HIS
    INDIVIDUAL CAPACITY, BOOKING
    ROOM DEPUTY JERRED MARK
    NECAISE, OFFICIALLY AND IN HIS
    INDIVIDUAL CAPACITY, BOOKING
    ROOM DEPUTY CATHERINE
    PAVOLINI, OFFICIALLY AND IN
    HER INDIVIDUAL CAPACITY,
    AMERICAN CORRECTIONAL
    ASSOCIATION, AND OTHER UNKNOWN
    JOHN AND JANE DOES A-Z, ALSO
    IN THEIR OFFICIAL AND
    INDIVIDUAL CAPACITIES,
         Defendants.
```

**DEPOSITION OF RODERICK C. MILLER**

Taken at the offices of Dukes, Dukes, Keating & Faneca, 2909 13th Street, Sixth Floor, Gulfport, Mississippi, on Friday, February 29, 2008, beginning at 10:04 a.m.

SIMPSON BURDINE & MIGUES  (228) 388-3130
mburdine@sbmreporting.com

EXHIBIT H

```
 1   APPEARANCES:

 2        MICHAEL W. CROSBY, ESQUIRE
          Attorney at Law
 3        2111 25th Avenue
          Gulfport, Mississippi  39501
 4            ATTORNEY FOR PLAINTIFF

 5        HALEY N. BROOM, ESQUIRE
          TRACE McRANEY, ESQUIRE
 6        Dukes, Dukes, Keating & Faneca, P.A.
          2909 13th Street, Sixth Floor
 7        Gulfport, Mississippi  39501
              ATTORNEYS FOR HARRISON COUNTY SHERIFF
 8            DEPARTMENT, SHERIFF GEORGE PAYNE,
              DIANNE GATSON-RILEY, PHIL TAYLOR,
 9            PRESTON WILLS, CATHERINE PAVOLINI

10        IAN BRENDEL, ESQUIRE
          Law Office of Jim Davis
11        1904 24th Avenue
          Gulfport, Mississippi  39502
12            ATTORNEY FOR RICK GASTON

13        KAREN YOUNG, ESQUIRE
          Meadows Law Firm
14        1902 21st Avenue
          Gulfport, Mississippi  39501
15            ATTORNEY FOR HARRISON COUNTY, MISSISSIPPI

16        GEORGE D. HEMBREE, ESQUIRE
          McGlinchey Stafford
17        200 Lamar Street
          City Centre South, Suite 1100
18        Jackson, Mississippi  39201
              ATTORNEY FOR AMERICAN CORRECTIONAL
19            ASSOCIATION

20

21   REPORTED BY:

22        MELISSA L. BURDINE, CSR No. 1716
            Simpson Burdine & Migues
23             Post Office Box 4134
            Biloxi, Mississippi  39535
24                228-388-3130

25
```

1  Now, if you asked him based on, you
2  know, investigation, reason and belief that under
3  the circumstances he would have to know -- you
4  know, some of this would come out later in
5  discovery. But, you know, I think that if you
6  would limit it to what he can reasonably be aware
7  of himself in his personal observation, which I
8  think is what you're trying to do. I think you're
9  trying to establish George Payne did not hit him,
10 hit Roderick, or personally direct anyone to hit
11 Robert is his presence. Is that what you're
12 asking?
13 MS. BROOM:
14    Yes. That's what I'm asking.
15    Q. Did Sheriff Payne personally participate
16 in the use of excessive force against you while
17 you were incarcerated?
18 MR. CROSBY:
19    Of his observation?
20    A. I never -- no, Sheriff Payne did not hit
21 me physically. I didn't --
22    Q. Did -- I'm sorry. Go ahead. I didn't
23 mean to interrupt you.
24    A. Sheriff Payne did not personally hit me.
25    Q. Did he direct anyone to hit you?

MR. CROSBY:

    To your knowledge.

MS. BROOM:

    Well, this entire testimony is based on his knowledge.

    A.    Not to my knowledge. Not that I personally heard him give any direction.

MS. BROOM:

    Q.    Did Sheriff Payne have any evidence that -- do you have any evidence that Sheriff Payne knew you were being physically assaulted and failed to stop it?

    A.    On that particular night that I was being physically assaulted?

    Q.    Correct.

MR. CROSBY:

    I'm going to object to the form of the question.

MS. BROOM:

    Q.    Do you have any personal knowledge that Sheriff Payne knew that you were going to be assaulted that night?

MR. CROSBY:

    Same objection, but you can still try to answer the best you can.

A. I don't. Because I don't know what Sheriff Payne was doing that night.

MS. BROOM:

Q. Do you have any personal knowledge that Sheriff Payne could have prevented you from being assaulted that night?

A. Just at this point based on the prior -- the allegations and they were non-compliant with the 1995 --

Q. I'm sorry. I can't hear you.

A. Just based on the fact that he may have known -- apparently they have had use of force incidences and he was aware of those and never did anything to prevent any use of -- you know, discipline his deputies on those other uses of force and the years of other abuse at the jail prior to my incident.

If they have been -- you know, as far as they weren't compliant with the 1995 consent decree agreement, the agreement with the federal courts.

Q. Okay. Do you allege that Dianne Gatson-Riley personally participated in the use of excessive force against you on 4/17/04?

MR. CROSBY:

1                Object to the form of the question, but
2    you can answer.
3    MS. BROOM:
4        Q.    Did Dianne Gatson-Riley personally
5    assault you?
6        A.    No.
7        Q.    Do you have any evidence to show that
8    she knew that this assault was going to occur?
9        A.    Excuse me. May I speak with him for a
10   minute?
11   MR. CROSBY:
12            Okay. If he doesn't personally know of
13   who you're talking about, you know, identity -- I
14   don't think he knows who Dianne Gatson-Riley is
15   personally.
16            If you want to ask him if he knows if
17   the warden, the female warden of the jail hit him
18   with her own hands, I'll stipulate she didn't, if
19   that's your question. She did not punch him or
20   kick him. Is that your question?
21   MS. BROOM:
22       Q.    Do you know who Dianne Gatson-Riley is?
23       A.    No.
24       Q.    Okay. You have her named as a defendant
25   in your lawsuit, correct?

1  A. Yes.
2  Q. Okay. Are you aware that she was the
3  warden at the time?
4  A. No.
5  Q. You're just not aware of what she
6  physically looks like, correct?
7  A. Yes.
8  Q. So do you have --
9  MR. McRANEY:
10      You stipulate she didn't --
11 MR. CROSBY:
12      She did not physically strike Roderick,
13 we'll stipulate it, nor did George Payne.
14 MS. BROOM:
15  Q. All right. What about Phil Taylor, did
16 he physically strike you?
17  A. No. He didn't physically strike me.
18  Q. Do you have any personal knowledge that
19 Riley knew that this incident was going to occur
20 to you that night?
21  A. No.
22  Q. Do you have any personal knowledge that
23 she could have prevented this incident from
24 occurring?
25  A. No personal knowledge. But due to the