IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | | |
|---|---|---|
| **RODERICK CLARK MILLER** § | | **PLAINTIFF** |
| § | | |
| V. § | | **NO. 1:07cv541-LG-JMR** |
| § | | |
| **HARRISON COUNTY, MISSISSIPPI, et al.** § | | **DEFENDANTS** |

**MEMORANDUM OPINION AND ORDER GRANTING
AMERICAN CORRECTIONAL ASSOCIATION SUMMARY JUDGMENT**

**THIS MATTER IS BEFORE THE COURT** on Defendant American Correctional Association's ("ACA") Motion to Dismiss [15] pursuant to Federal Rule of Civil Procedure 12(b)(6), or in the alternative 56(c). Plaintiff Roderick Clark Miller initiated this action for federal and state law claims arising from his detention at the Harrison County Adult Detention Center ("HCADC"). He alleges that ACA wrongfully accredited the jail, and as a result, he was beaten and deprived of personal property. ACA argues (1) it is not a state actor, (2) it did not participate in a conspiracy to deprive him of his rights or to beat him, (3) it had no authority to prevent a conspiracy, and (4) ACA did not breach the accreditation contract. Miller did not file a response. The Court has considered the motion, brief, record, and relevant legal authority. ACA is granted summary judgment.

**FACTS AND PROCEDURAL HISTORY**

Miller was arrested and placed into the custody of the HCADC on April 17, 2004. He alleges that while detained in the Booking area, his house and car keys were given to his girlfriend's friend, and Harrison County Deputies beat him, verbally threatened him, and refused to let him make his phone call.

At the time, the jail was ACA accredited. ACA is a national organization that publishes

standards for and provides accreditation to correctional facilities. ACA contracted with Harrison County to inspect HCADC and, if it was found in compliance with ACA standards, to accredit HCADC. Pursuant to the contract, ACA granted accreditation on January 11, 2003.

The Complaint asserts claims against ACA under Section 1983, for a violation of Miller's Fifth, Eighth, and Fourteenth Amendment rights. "The violations . . . include, but are not limited to, the use of excessive force . . . deprivation of identifiable civil rights, i.e., liberty and/or property. . . and thereafter, evidence a deliberate indifference to the immediate, grave and serious medical needs of the Plaintiff. . . ." (Compl. at 12 (¶27)). The Complaint appears to also allege that ACA conspired with the Harrison County defendants to interfere with Miller's civil rights in violation of Section 1985, and failed to prevent that conspiracy in violation of Section 1986. Finally, ACA is charged with civil conspiracy, breach of a non-delegable fiduciary duty (to provide medical care), breach of a third party beneficiary contract, and infliction of emotional distress.

## DISCUSSION

Because the Court was presented and has considered matters outside the pleadings, the Court converts the motion to one for summary judgment. FED. R. CIV. P. 12(d). A motion for summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56. The Court must view the evidence in the light most favorable to the non-moving party. *Abarca v. Metro. Transit. Auth.*, 404 F.3d 938, 940 (5th Cir. 2005). A "material fact" is one that might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute about a material fact exists when the evidence is such

that a reasonable jury could return a verdict for the non-moving party. *Id.*

The party that bears the burden of proof at trial also bears the burden of proof at the summary judgment stage. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A party seeking summary judgment bears the initial burden of identifying those portions of the pleadings and discovery on file, together with any affidavits, which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 325. Once the movant carries its burden, the burden shifts to the non-movant to show that summary judgment should not be granted. *Id.* at 324-25. "[W]hen a motion for summary judgment is made and supported . . . an adverse party may not rest upon . . . mere allegations or denials . . . but . . . must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e).

SECTION 1983

Miller accuses ACA of violating his constitutional rights by wrongfully accrediting the jail. ACA argues that it is not a state actor. To prove Miller's claim under Section 1983, he will have to show, among other things, that ACA acted under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). "To constitute state action, 'the deprivation must be caused by the exercise of some right or privilege created by the State . . . or by a person for whom the State is responsible,' and 'the party . . . must be a person who may fairly be said to be a state actor.'" *Id.* at 49 (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982)). "This may be because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the state." *Id.*

"Private individuals generally are not considered . . . state actors. . . . Notwithstanding this limitation, a private individual may act under color of law in certain circumstances, such as when a

private person is involved in a conspiracy or participates in joint activity with state actors." *Ballard v. Wall*, 413 F.3d 510, 518 (5th Cir. 2005). State action may also be found where the state compels the private party to act, "when the state provides 'significant encouragement, either overt or covert,'" when the private entity is controlled by the State, when the private party performs a public function, or when the private party is so entwined with the State as to make the party a state actor. *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 296 (2001).

It is undisputed that "ACA is a private, not-for-profit corporation" made up of "corrections officials and officers, sheriffs, probation and parole officers, members of the judiciary, ex-offenders, and others interested in the improvement of correctional systems." (Gondles Aff. at 1 (¶3)). ACA is an educational organization that "maintains a private, non-governmental, voluntary accreditation program, pursuant to which . . . [government] correctional facilities may apply for ACA accreditation." *Id.* at 2 (¶5). ACA is funded by fees from correctional facilities seeking accreditation. "Accreditation is based upon an applicant correctional facility's demonstration of compliance with correctional facility standards adopted by ACA." *Id.* "ACA has no authority to require a correctional facility to seek accreditation, to adopt any procedures or to change any existing procedures. Rather, ACA's sole authority is to deny accreditation . . . from, any facility found not to be in compliance. . . ." *Id.* at (¶6).

Defendant Harrison County Sheriff's Department entered into an accreditation contract with ACA, which required ACA to inspect the jail, determine if it was in compliance, and to accredit it if it was in compliance. Pursuant to this contract, three ACA-appointed auditors inspected the jail June 24-26, 2002, and found it to be in compliance with ACA standards. It was thus awarded accreditation on January 11, 2003, for a period of three years.

Was ACA a state actor when it accredited the jail? There is no evidence that ACA entered into a conspiracy with the State defendants to wrongfully accredit the jail. There is further no evidence that ACA was coerced or encouraged in its action by the government, nor that ACA was controlled by the government, nor that ACA was delegated a public function that was traditionally the prerogative of the State, nor that the government entwined in ACA's management or control.

Because there is no genuine dispute of material fact as to ACA's private status, it is entitled to judgment as a matter of law on the Section 1983 claim.

SECTION 1985

Miller alleges that ACA entered into a conspiracy with the State defendants to deprive him of his Fifth, Eighth, and Fourteenth Amendment rights. ACA argues that it did not participate in the conspiracy, and it was not motivated by racial animus.

ACA is liable to Miller under Section 1985 if ACA conspired with another to deprive Miller, either directly or indirectly, of equal protection, privileges, or immunities of the law. 42 U.S.C. § 1985. As stated previously, there is no evidence of a conspiracy to wrongfully accredit the jail. On this record, there is likewise nothing from which a reasonable juror could conclude that ACA participated in any other kind of conspiracy to deprive Miller of his constitutional rights. The only evidence as to ACA's conduct demonstrates that it entered a contract to provide accreditation services, sent three auditors to evaluate the jail, found the jail to be in compliance with ACA standards, and so awarded the jail accreditation. Therefore, ACA is entitled to judgment as a matter of law on Miller's Section 1985 claim.

SECTION 1986

Miller further contends that ACA is liable under Section 1986 for failing to stop the

conspiracy. ACA argues it was not present at any point during the conspiracy or the fulfilling of it; it had no authority to stop the conspiracy; and the Section 1986 claim is barred by the statute of limitations.

The United States Code provides in pertinent part:

> Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in [Section 1985], are about to be committed, and having power to prevent or aid in preventing the commission of same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured.

42 U.S.C. § 1986. Importantly, to be liable for failure to stop the commission of a Section 1985 conspiracy, Miller need not prove that ACA was a co-conspirator.

Nonetheless, there is no evidence that ACA had knowledge of any conspiracy to deprive Miller of his civil rights. Thus, ACA is entitled to judgment as a matter of law on Miller's Section 1986 claim.

CIVIL CONSPIRACY

Miller also advances a state law claim for civil conspiracy that, "[o]n the date in question the Defendants . . . entered into an agreement" to beat him. (Compl. at 19 (¶49)). Again, ACA argues that it was never present during the formation of this conspiracy.

To prove civil conspiracy, Miller must show "an agreement between [ACA and another] for the purpose of accomplishing an unlawful purpose or a lawful purpose unlawfully" which results in damages to Miller. *Braddock Law Firm, PLLC v. Becnel*, 949 So. 2d 38, 44 (¶20) (Miss. Ct. App. 2006). "It is elementary that a conspiracy requires an agreement between the co-conspirators." *Gallagher Bassett Servs., Inc. v. Jeffcoat*, 887 So. 2d 777, 786 (¶37) (Miss. 2004). It is undisputed that ACA was not present at the jail on April 17, 2004. There is no evidence that ACA agreed to beat Miller, or agreed to perform any conduct that would facilitate or cover up his

beating. This claim likewise fails.

### BREACH OF NON-DELEGABLE DUTY

In Count VI.B. of his Complaint, Miller alleges that ACA failed to provide him necessary medical care after his beating. ACA argues that it was not present during Miller's incarceration.

This claim also fails for lack of knowledge on ACA's part. It is undisputed that ACA was not present during his beating, nor had any knowledge of it nor his actual or potential need for medical attention.

### BREACH OF THIRD PARTY BENEFICIARY CONTRACT

Miller alleges that he was a third party beneficiary to the accreditation contract between ACA and the Sheriff's Department. Miller claims that ACA breached that contract, because it knew or should have known that the jail was not up to ACA standards. This breach, he alleges, led to his beating and deprivation of property. ACA argues that Miller was not a third party beneficiary, ACA did not breach the contract, and in the alternative, the breach did not cause Miller damages.

Under the contract, ACA was required to evaluate the jail, and to accredit it only if it complied with ACA standards. It is undisputed that ACA accredited the jail in 2003, because ACA found the jail to be in compliance with ACA standards. Because there is no genuine issue of material fact as to whether ACA breached its duty, this claim must likewise be dismissed.

### INFLICTION OF EMOTIONAL DISTRESS

Miller alleges, "The Defendants['] overall conduct on the date in question was so outrageous that it shocks the moral and legal conscience of the community. This outrageous conduct resulted in the beating of the Plaintiff." (Compl. at 21 (¶55)). Miller also asserts a claim

for negligent infliction of emotional distress.  ACA argues it did not participate in the conspiracy, beating, or deprivation of property during Miller's incarceration, and so cannot be liable for either intentional or negligent infliction of emotional distress.

To recover for intentional infliction of emotional distress, Miller must prove that ACA's conduct was "wanton and wilful and it would evoke outrage or revulsion." *Speed v. Scott*, 787 So. 2d 626, 630 (¶17) (Miss. 2001).  To recover for negligent infliction of emotional distress, Miller must prove, among other things, that ACA acted negligently.  *Mabus v. St. James Episcopal Church*, 884 So. 2d 747, 764 (¶39) (Miss. 2004).  The evidence reveals that ACA's only conduct was to abide by the terms of a lawful contract.  There is no evidence that ACA breached any duties to plaintiff, either negligently or intentionally.  Therefore, ACA is entitled to judgment as a matter of law on Miller's outrage and negligent infliction of emotional distress claims.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that Defendant American Correctional Association's [15] Motion to Dismiss, which this Court converts to one for summary judgment, should be and is hereby **GRANTED**.

**SO ORDERED AND ADJUDGED** this the 28th day of October, 2008.

s/ *Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
UNITED STATES DISTRICT JUDGE